# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ALLISON JEAN MELOY,

       Plaintiff,

v.                                                         CIV 18-0371 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (*Doc. 16*), filed on October 15, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3, 5, 6.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

**I.    Procedural History**

Ms. Allison Meloy (Plaintiff) protectively filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on December 12, 2013. *See* Administrative Record[1] (AR) at 182, 255-61. Plaintiff alleged a disability onset date of July 1, 2006. *See* AR at 255. Because

---

[1] Documents 11-1 through 11-9 comprise the sealed Administrative Record. *See Docs. 11-1–9.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

Plaintiff's earning record showed that she had "acquired sufficient quarters of coverage to remain insured through December 31, 2013[,]" she was required to "establish disability on or before that date in order to be entitled to a period of disability and [DIB]." AR at 12.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 174-82) and on reconsideration (AR at 183-92). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 203. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 113-73. ALJ Cole Gerstner issued an unfavorable decision on October 19, 2016. AR at 9-31. Plaintiff submitted a Request for Review of ALJ Decision to the Appeals Council (AR at 253-54), which the council denied on February 22, 2018 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.    Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[2] ALJ Gerstner found that while Plaintiff worked in several part-time positions from 2006-2010 and made two "unsuccessful work attempts" in 2012-2013, she "did not engage in substantial gainful activity since July 1, 2006, the alleged onset date." AR at 14 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "had the following severe impairments: ulcerative colitis; migraine headaches; eczema; and depression." AR at 14 (citing 20 C.F.R. § 404.1520(c)). ALJ

---

[2] ALJ Gerstner first found that Plaintiff "last met the insured status requirements of the Social Security Act through December 31, 2013." AR at 14.

3

Gerstner also noted that Plaintiff's "asthma was a 'non-severe' impairment" because "[t]here [was] no evidence that [her] asthma was greater than a slight abnormality or that it resulted in more than a minimal effect on [her] ability to perform basic work activities during the" relevant time period. AR at 15.

At Step Three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Ultimately, the ALJ found that through the date last insured, Plaintiff

> had the [RFC] to perform a limited range of light work as defined in 20 [C.F.R. §] 404.1567(b) as follows:
>
> ● [She] was able to lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently;
>
> ● [She] was able to stand and/or walk and sit for approximately six hours in an eight-hour workday;
>
> ● [She] was able to perform pushing and pulling from a seated position within the above weight restrictions; and
>
> ● [She] would be able to understand, remember, and carry out simple, routine, and repetitive tasks and make simple work-related decisions.

AR at 17. The ALJ further determined that, through the date last insured, Plaintiff could not perform her past relevant work, but she could perform the jobs of cashier II, mail sorter, and furniture rental clerk. AR at 24-25. Ultimately, the ALJ found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 1, 2006, through December 31, 2013, the date last insured." AR at 26 (citing 20 C.F.R. § 404.1520(g)).

4

**III.    Legal Standard**

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

**IV.    Discussion**

Plaintiff contends that the following issues require reversal: (1) the ALJ did not properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p; (2) the ALJ did not adequately assess the opinion of Dr. Michael Gavin, M.D.; (3) the ALJ misstated the VE's testimony about the number of days Plaintiff could miss in a month; and (4) the ALJ failed to resolve conflict between the VE's testimony and the requirements of the jobs the ALJ found Plaintiff could perform. *Doc. 16* at 3-16.

**A.    The ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence.**

Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6

> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

Here, ALJ Gerstner summarized Plaintiff's testimony and self-reports regarding the pain and other symptoms she experiences due to her ulcerative colitis and related migraines. AR at 15, 17-18. The ALJ also thoroughly reviewed the evidence of record and concluded that "[t]he clinical findings prior to [Plaintiff's] date last insured are not consistent with the extreme symptoms to which she testified at the hearing. [Her] treatment records do not support her testimony of debilitating pain and fatigue and frequent bowel movements on or before December 31, 2013." AR at 18.

Plaintiff argues that "[t]he ALJ gave weak and insufficient reasons for rejecting [her] statements regarding" her ulcerative colitis symptoms, and that the evidence he cited in support of his finding "is not substantial evidence to support that [her] statements" were not consistent with the record. *Doc. 16* at 4-5. The Commissioner contends that the ALJ reasonably evaluated Plaintiff's subjective complaints in the context of the record, and his findings were supported by substantial evidence. *Doc. 18* at 19-21. The Court agrees that the ALJ gave thoughtful reasons and finds that his determination regarding Plaintiff's subjective complaints is supported by substantial evidence. Specifically, ALJ Gerstner discussed:

<u>Daily activities</u>: The ALJ reviewed Plaintiff's account of her daily activities. She testified that her husband and mother do housework and prepare meals. AR at 23, 140-

7

41. The only housework she performs is to occasionally "put a glass or silverware in the dishwasher." AR at 23, 141. "[S]he rarely drives due to side effects from medication." AR at 2, 121. She goes "grocery shopping with her husband and she can walk around for about 10 minutes if she is feeling well." AR at 23, 151-52. She attends church, "but it takes her hours to get ready." AR at 23, 151. She listens to music, rarely watches television, and enjoys getting online to check Facebook and email, but becomes fatigued after approximately 20-30 minutes and must lie down. AR at 23, 149-50. "She testified that she lies down on and off all day." AR at 23, 150.

The location, duration, frequency, and intensity of pain or other symptoms: ALJ Gerstner reviewed Plaintiff's allegations of pain and other symptoms, including trouble concentrating, abdominal pain; "terrible side effects from medication that made it very difficult for her to concentrate[;]" "bathroom urgency, which caused her anxiety[;]" a loss of control of her bowels; migraines with an aura, facial pain, and sharp pain that radiated to her back; diarrhea with pain and bloody mucus; and an inability to sit still or walk longer than ten minutes because of fatigue and pain. AR at 17-18, 132-34, 144, 149, 152.

Factors that precipitate and aggravate the symptoms: ALJ Gerstner noted that "[s]tress triggered [Plaintiff's] flares of ulcerative colitis." AR at 17, 147-48.

The type, dosage, effectiveness, and side effects of any medication: The ALJ discussed Plaintiff's intravenous Remicade infusions (occurring every six or eight weeks) and Asacol regimen for ulcerative colitis flare-ups (AR at 19, 20), and mentioned that Plaintiff "stated she was 'out of it' the day of the Remicade infusion, the next day, and the day after that" (AR at 23, 134). He noted that Plaintiff complained of headaches

8

occurring approximately two days after the Remicade infusions (AR at 19, 133-34), but that she had also complained of migraines prior to the infusions (AR at 17). He stated she "sometimes took prednisone for diarrhea but this was a last resort due to side effects consisting of hair loss and 'moon face[,]'" and "at times she also used suppositories and retention enemas." AR at 23, 133, 153. ALJ Gerstner mentioned that Plaintiff experiences "insomnia [as] a side effect of her medication" and takes trazodone to combat the insomnia, but feels "drowsy, groggy, and 'drugged'" the next day. AR at 22-23, 147.

Medications and treatment: The ALJ described Plaintiff's medication regimen as summarized above. He detailed her medical history during the relevant time period, noting when she had flares and when she reported that she was "doing well" and the doctors found her ulcerative colitis was in remission. AR at 18-23.

Measures Plaintiff uses to relieve pain and symptoms: The ALJ stated that Plaintiff "used medical cannabis and a heating pad" that "'somewhat' helped relieve her pain." AR at 23, 130-31. He noted that the Imitrex Plaintiff takes for migraines "required her to sleep for three to four hours to avoid having a 'rebound headache.'" AR at 23, 134.

Plaintiff acknowledges that the ALJ detailed "treatment records showing long periods of remission for up to a year or more and generally normal bowel function during the period at issue" (*Doc. 16* at 9 (quoting AR at 23)), but argues that the ALJ violated SSR 16-3p by using this evidence to "undermine [her] statements concerning the effects of ulcerative colitis" (*id.*). Social Security Ruling 16-3p provides that an ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not

9

substantiate the degree of impairment-related symptoms alleged . . . ." SSR 16-3p at *5. An ALJ uses "minimal or negative findings or inconsistencies in the objective medical evidence [as] one of the many factors . . . in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Id.*

Here, the ALJ considered Plaintiff's complaints of pain and symptoms in conjunction with the relevant factors discussed in SSR 16-3p. The ALJ thoroughly summarized the treatment notes from Plaintiff's providers to support his finding that she had long periods of remission. AR at 18-19 (noting Plaintiff was "asymptomatic . . . with no diarrhea, bleeding, or abdominal pain" (citing AR at 428, 436)), 19 (noting her ulcerative colitis was "in remission" (citing AR at 457)), 19-20 (detailing the many records that reported Plaintiff was doing "well" (citing AR at 495-96, 492-93, 490, 501, 484, 470-71)). He also specifically discussed why he discounted her testimony that she had "migraines three to four times per [week]." [3] AR at 15 (although she did tell one provider in July 2010 that she had migraines one to two times "per week with no relief from Excedrin" (citing AR at 456), later treatment records established that "she was getting effective relief from Imitrex" for migraines that typically "occur[red] with menses or during episodes of increased stress" – "about six times per month" (citing AR at 454-44, 522, 975)).

Plaintiff contends that "[t]he fact [she] had periods of remission does not undermine her statements about the limiting effects of her symptoms." *Doc. 16* at 9. She

---

[3] The ALJ actually said "three to four times per month[,]" but he then goes on to discuss that the treatment record, which shows approximately six migraines per month, does not support Plaintiff's testimony about the number of migraines she has per month. *See* AR at 15. The Court presumes this was an error.

10

argues that the evidence ALJ Gerstner relied on was overwhelmed by other evidence. *Id.* The Court disagrees. The ALJ acknowledged the times that Plaintiff experienced flares of her ulcerative colitis and the accompanying pain and symptoms. *See* AR at 18 (noting impression of ulcerative colitis with rectum "the only area of disease activity" (citing AR at 392)), 19 (noting an acute flare in May 2010 with blood, mucus, and urgency, and a biopsy that showed "chronic active colitis as well as inflammatory changes in her cecum and ascending colon" (citing AR at 490, 492)), 19 (noting a mild flare in June 2011 with urgency, mucus, and blood but no abdominal pain (citing AR at 481)), 20 (noting an "acute onset of diarrheal illness that lasted a day and a half" in March 2012 (citing AR at 476)), 20 (noting that she had experienced a flare in late 2012 that was treated with prednisone (discussing AR at 467-68, *see also* AR at 470, 473)), 20 (noting that in February 2014, Plaintiff stated that she'd had an increase in urgency, blood, and abdominal pain over the past six months (citing AR at 536)), 21 (discussing record evidence of flares after the date last insured). Of the flares that Plaintiff listed in her motion, the ALJ only failed to discuss one incident: Plaintiff testified that she had done some seasonal work sorting mail in 2013, but she did not complete the training due to a flare and was fired due to absences. *See Doc. 16* at 6 (citing AR at 123-24). Plaintiff does not argue, however, that this flare was documented separately in the medical record, thus the Court does not find that the ALJ erred in failing to discuss it.[4]

The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are

---

[4] The Court notes that ALJ Gerstner did mention this work attempt at Step One. *See* AR at 14 (noting that Plaintiff made an unsuccessful work attempt at the United States Postal Service in 2012 but left "within three months because of her condition").

11

supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court finds that the ALJ's findings regarding Plaintiff's subjective complaints of pain and other symptoms are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler*, 68 F.3d at 391).

### B. The ALJ adequately evaluated Dr. Gavin's opinion.

Plaintiff argues that the ALJ erred in giving Dr. Michael Gavin's opinion partial weight on the basis "that the limitations [Dr. Gavin] assessed applied only when [she] had a flare of ulcerative colitis." *Doc. 16* at 12 (quoting AR at 21). Dr. Gavin, a gastroenterologist, treated Plaintiff from January 2011 through July 2013. *See* AR at 697. In July 2014, Dr. Gavin completed a Residual Functional Capacity Form, opining on Plaintiff's limitations and symptoms due to her ulcerative colitis diagnosis. *See* AR at 697-702. He qualified his opinion regarding her functional limitations (sitting, standing, etc.) to those times when she had a flare of ulcerative colitis. *See* AR at 698-99. He did not, however, similarly qualify his opinion of Plaintiff's symptoms: he noted that she experienced frequent bathroom visits and daily abdominal pain due to her diagnosis. AR at 700.

ALJ Gerstner gave "Dr. Gavin's evaluation partial weight, since he noted that the limitations he assessed applied only when [Plaintiff] had a flare of ulcerative colitis." AR at 21. The ALJ "note[d] that Dr. Gavin did not quantify [the] flares" and "emphasize[d] that the . . . treatment records, including those from Dr. Gavin, show that [her] condition was in remission for periods of up to one year or more and that she had generally normal bowel function during the period on or before her date last insured." AR at 21.

12

Plaintiff contends that the ALJ committed two errors: first, in not explicitly discussing whether Dr. Gavin's opinion was entitled to controlling weight, and second, in construing Dr. Gavin's opinion regarding Plaintiff's symptoms to apply only to those times she experiences flares. *Doc. 16* at 12-14.

When analyzing an opinion from a claimant's treating physician, an "ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . . If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.

*Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotations omitted) (alterations in original)). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Krauser*, 638 F.3d at 1330. However, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference . . . ." *Id.* The ALJ "must make clear how much weight the opinion is being given . . . and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* When weighing the opinion, the ALJ considers "all of the factors provided in 20 C.F.R. § 404.1527[,]" which include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

13

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (internal quotations omitted)).

Here, it is clear that ALJ Gerstner did not give Dr. Gavin's opinion controlling weight, and the Court will not reverse on this basis. *See Mays*, 739 F.3d at 575 (noting that because it was clear "from the decision that the ALJ declined to give controlling weight to" the treating physician's "opinion, [the court would] not reverse on this ground") (citation omitted). Further, the Court finds that the ALJ adequately evaluated Dr. Gavin's opinion at the second step of the analysis.

With respect to the first, second, and fifth factors, ALJ Gerstner noted that Plaintiff sought care from Dr. Gavin "approximately every three months for ulcerative colitis from January 2011 to July 2013." AR at 21. With respect to the third and fourth factors, the ALJ specified that he gave Dr. Gavin's opinion partial weight as the limitations he opined were confined to the times Plaintiff had a flare of ulcerative colitis. AR at 21. The ALJ discounted the opinion because Dr. Gavin did not quantify the flares, and the ALJ found that Plaintiff's "treatment records, including those from Dr. Gavin, show that [her] condition was in remission for periods of up to one year or more and that she had generally normal bowel function during the period on or before her date last insured." AR at 21.

Plaintiff complains that Dr. Gavin did not explicitly limit his opinion regarding her symptoms to those times she has flares, and the ALJ erred in so finding. *Doc. 16* at 12-13. Yet, the record supports the ALJ's finding, as the ALJ detailed earlier in his decision. For example, in May 2011, Dr. Gavin noted that Plaintiff's last flare of ulcerative colitis

was a year prior, and she was "doing well" with "two to three bowel movements per day that were well formed and non-bloody[, and s]he denied any pain, nausea, or vomiting." AR at 19 (citing AR at 484). In March 2012, Dr. Gavin compared "a rather acute onset of diarrheal illness" with "normal bowel function," in which she had two bowel movements per day with no fever, chills, or abdominal pain. *See* AR at 20 (citing AR at 476). In January 2013, when Dr. Gavin reported that Plaintiff was in "clinical remission," he stated that she had two formed bowel movements per day with "no associated abdominal pain." AR at 20 (citing AR at 470-71). The Court notes that Dr. Gavin referred to Plaintiff's symptoms as "ulcerative colitis symptoms" and noted that she denied symptoms during the times her disease was in remission. *See, e.g.*, AR at 467-68.

Plaintiff does not point to any treatment record to support a finding that she exhibited these symptoms when she was not experiencing a flare of ulcerative colitis. *See Docs. 16* at 12-14; 19. Ultimately, the Court finds that the ALJ's decision to give Dr. Gavin's opinion partial weight is well-reasoned and supported by substantial evidence.

### C. The Court will remand for further analysis of the VE's testimony.

Plaintiff makes two arguments regarding the VE's testimony. First, she contends that the ALJ misstated the VE's testimony about the number of days an individual can miss work without being disciplined or terminated. *Doc. 16* at 11-12. Second, she argues that the ALJ failed to resolve a conflict between the VE testimony and the Dictionary of Occupational Titles (DOT). *Id.* at 14-16.

#### 1. The Court will direct the ALJ to address the contradiction in the VE's testimony about the acceptable number of days missed per month.

At the administrative hearing, the ALJ asked the VE about the number of days off employers generally find acceptable: "What would be excessive in a competitive work environment?" AR at 170. The VE replied:

> Anything more than one day per month is . . . what employers say. However, if an individual continually took one day per month, I'm sure that would also result in progressive discipline or termination . . . . But one day per month is the acceptable rate. Nothing more than one per month.

AR at 170. Later, Plaintiff's attorney asked the VE, "if [Plaintiff] were to miss a day every eight weeks" for infusion treatments, "would that have to be accommodated by an employer?" AR at 171. The VE responded "Yes, it would. . . . Because that, I believe, would take perhaps more than one day." AR at 172. The attorney clarified that "if [Plaintiff] were to take [the infusion] on Friday," and return to work on Monday, "you're saying that would eliminate jobs?" AR at 172. The VE replied "Definitely." AR at 172.

The ALJ mentioned this discrepancy in the VE's testimony:

> The vocational expert also testified that absences greater than one day per month would be considered excessive and would preclude competitive employment and that one day of absence per month would normally be "the acceptable rate." [Plaintiff's attorney] asked the vocational expert to assume that the individual would need to miss a minimum of one day of work every eight weeks for infusion treatments. The vocational expert testified that this would be an accommodation[] which would eliminate competitive employment. However, I do not rely on the vocational expert's testimony as the basis for my decision, since one day of absence every eight weeks is within the one day per month the vocational expert previously testified would normally be acceptable.

AR at 25. In other words, the ALJ chose to credit the VE's first statement (one day of missed work per month is acceptable) over her second statement (one day of missed work every eight weeks will eliminate jobs). Because the Court will remand for the reasons discussed below, the Court will also direct the VE to clear up any discrepancies

16

regarding the acceptable number of absences. *See Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987) (noting that an ALJ "may not ask a [VE] a hypothetical question based on substantial evidence and then ignore unfavorable answers") (citations omitted).

### 2. The Court will remand so that the ALJ may address the inconsistency between the VE's testimony and the DOT.

Finally, Plaintiff argues that the ALJ failed to resolve an inconsistency in the VE's testimony with information in the DOT, in that the reasoning level of cashier II (DOT Code 211.462-010), mail sorter (DOT Code 209.687-026), and furniture rental clerk (DOT Code 295.357-018) is not consistent with the ALJ's finding that Plaintiff is limited to jobs in which she can understand, remember, and carry out simple, routine, and repetitive tasks and make simple work-related decisions. *See Doc. 16* at 14. The jobs the VE testified to and the ALJ identified as appropriate for Plaintiff require a reasoning level of three. *See* AR at 25, 166-67; *see also* DOT Vol. I, at 181, 183, 234 (4th ed. rev. 1991). The Tenth Circuit has held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). This is an "affirmative responsibility" in which the adjudicator must both "[a]sk the VE . . . if the evidence he or she has provided conflicts with the information provided in the DOT; and [if] the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4.

17

The Tenth Circuit extended these principles to General Educational Development (GED) reasoning levels in *Hackett*, 395 F.3d at 1176. GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appx. C, Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* At issue here is the Reasoning Development division, which has six defined levels, with one representing the lowest level and six representing the highest. *Id.*

Plaintiff argues that the cashier II, mail sorter, and furniture rental clerk jobs, all with a reasoning level of three, are inconsistent with her RFC limitation to simple, routine, and competitive tasks and simple work-related decisions. A reasoning level of three requires a worker to: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id.* The Tenth Circuit has "held that a limitation to 'simple and routine work tasks . . . seems inconsistent with the demands of level-three reasoning." *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (quoting *Hackett*, 395 F.3d at 1176).

The Commissioner does not dispute this argument, but instead urges the Court to consider that Plaintiff may have the "ability to perform the jobs identified by the ALJ" due to her education (two years of college) and past relevant work (which required a GED reasoning level of four). *Doc. 18* at 22. Yet, the ALJ specifically found that Plaintiff was unable to perform her past relevant work (AR at 24); thus, the Court does not find it appropriate to hypothesize that she can perform tasks outside of her RFC based on her

past relevant work. In short, the ALJ failed to obtain an explanation for this clear conflict. The Commissioner cites no authority to support her position that the ALJ's error is harmless, or that it is at all appropriate for the Court to make such a post-hoc finding in the ALJ's place.

As a back-up plan, the government asks the Court to accept two other jobs that the VE mentioned as possibilities—addresser and toy stuffer. *Doc. 18* at 23 (citing AR at 167-69). The Commissioner cites *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009), for the proposition that where the ALJ erroneously relied on two jobs, but substantial evidence showed the claimant could perform a third job, the error on the first two jobs was harmless. *Raymond* is distinguishable, however, because the ALJ actually listed the third job in the decision. *See id.* at 1271, 1274. Here, ALJ Gerstner did not mention the jobs of addresser or toy stuffer in his decision. Moreover, as Plaintiff points out in her reply, these two positions add up to only 10,028 jobs in the economy. *See Doc. 19* at 2-3; AR at 168-69 (addresser – 6,197 jobs; toy stuffer – 3,831 jobs). The government did not argue that these positions represent a significant number of jobs in the economy, and the Court declines to supply that argument in its place.

For these reasons, the Court will reverse and remand for further analysis of the conflict between the VE's testimony and the DOT.

## V. Conclusion

The Court finds that the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence and that the ALJ adequately evaluated Dr. Gavin's opinion. The Court will remand, however, because the ALJ failed to address an inconsistency between the VE's testimony and the DOT. The ALJ should also address

19

the contradiction in the VE's testimony about the acceptable number of days an individual may miss work in a month.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum (*Doc. 16*) is **GRANTED**.

                                                          _____
                                              UNITED STATES MAGISTRATE JUDGE
                                              Presiding by Consent